IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BAUTISTA CAYMAN ASSET
COMPANY

Plaintiff

vs

OROS VERDES, INC.

Defendant

CIVIL 16-2836CCC

**OPINION AND ORDER**

On October 17, 2016,, Bautista Cayman Asset Company ("Bautista" or "plaintiff") filed a Complaint against Oros Verdes, Inc. ("defendant"), for collection of monies and the foreclosure of mortgages and other collateral. Under certain loan and financing agreements (as defined below), Bautista requested the payment of a total amount of $134,657.94, which is composed of $107,935.07 in principal, $9,377.88 in accrued interests and $3,064.99 for late fees as of September 30, 2015, plus the amount of $19.49 per diem for interest and any additional amount incurred in costs and fees for each day from September 30, 2017 through the date of the payment in full of all amounts due under the loans. In the absence of payment in full by defendants, Bautista requested that the Court order the foreclosure of Mortgage Note and Mortgage and the sale, by public sale, of the real estate collateral. On December 12, 2016, Oros Verdes, Inc. answered the complaint.

Before the Court is Bautista's Motion for Summary Judgment (**d.e. 9**) filed on July 26, 2017. On September 12, 2017, Bautista filed a Request to Deem its Motion for Summary Judgment as Unopposed (d.e. 13), which the Court

CIVIL 16-2836CCC                    2

granted on January 18, 2018 (d.e. 19). Bautista has met and complied with all its obligations in enforcing its contractual remedies, and is entitled to collect on the amounts owed on the Financing Agreements as of right and Oros Verdes, Inc. did not oppose the summary judgment. For the reasons discussed below, Bautista's Motion for Summary Judgment (**d.e. 9**) is GRANTED.

## I.    UNCONTESTED MATERIAL FACTS

The following facts are uncontested:

1. The defendant Oros Verdes, Inc. ("defendant") is a corporation organized under the laws of the Commonwealth of Puerto Rico. Oros Verdes, Inc has a mailing address at 623 Ave. Ponce de León, Suite 601-A, San Juan, Puerto Rico 00917.

2. On January 31, 2002 Doral, and the Original Debtors José Félix Camuñas Córdova and his wife Ana del Carmen Colón Morera, and their Conjugal Legal Partnership (the "Original Debtors"), executed a commercial mortgage loan (the "Loan Agreement") whereby Doral granted to the Original Debtors a commercial loan in the principal amount of ONE HUNDRED FORTY TWO THOUSAND EIGHT HUNDRED DOLLARS ($142,800.00), with an annual interest rate at 6.5 % and maturity date on February, 2032.

3. The amount disbursed under the Loan Agreement is evidenced by a mortgage note issued by the Original Debtors on January 31, 2002 in the principal amount of ONE HUNDRED FORTY TWO THOUSAND EIGHT HUNDRED DOLLARS ($142,800.00) (the "Mortgage Note"), authenticated under affidavit number 1,345 of Notary Public Kristina Vivoni Girod.

4.   On April 1, 2005, the Original Debtors José Félix Camuñas Córdova and Ana Del Carmen Colón Morera entered into an agreement titled Debt Transfer and/or Cancellation Agreement pursuant to which Oros Verdes, Inc. agreed to assume all of the Original Debtors' obligations under the Loan Agreement thereby transferring such debt to the corporate defendant in this case. (d.e. 9-4).

5.   The Loan Agreement is guaranteed by the following mortgage note:

(a)   Mortgage note executed by the Original Debtors on January 31, 2002, payable to the order of Doral, thereinafter endorsed Bautista, for the principal amount of $142,800.00 authenticated under affidavit number 1,345 of Notary Public Kristina Vivoni Girod (the "Mortgage Note"). The Mortgage Note is guaranteed by a mortgage constituted through Deed Number 69 of January 31, 2002, before Notary Public Kristina Vivoni Girod, registered at page 196 of volume 271 of Luquillo, property number 12,874 of the Registry of Property of Fajardo, (the "Mortgage").

6.   The Mortgage Note which is secured by the Mortgage was subsequently endorsed to Bautista and is currently in its possession.

7.   Capital Crossing Puerto Rico, LLC, is the Service Agent of Bautista, and does not have legal title of the Mortgage Note. (d.e. 9-4, d.e. 7).

8.   The Mortgage encumbers the following property (the "Property"):

URBAN: HORIZONTAL PROPERTY: Apartment number 203 of the Playa Fortuna Condominium, located in the Mameyes ward of the municipality of Luquillo, Puerto Rico. This Apartment is built out of reinforced concrete and concrete blocks and is composed of one

level. Its access door gives it access to the B stairway located in the EAST side of the building being continuous to the WEST and EAST terraces located in the ground level which border a communal sidewalk which grants access to the parking area which borders public road number one which gives access to the lot where the Condominium was built. The stairs, terraces, sidewalk and parking are common elements. Area of the Apartment: 839.94 square feet equivalent to 78.06 square meters. Its boundaries are: by the NORTH, at a distance of 18 feet equivalent to 5.49 meters with exterior wall that separates it from a general common area composed of the north or back patio; by the SOUTH, at a distance of 18 feet equivalent to 5.49 meters with exterior wall that separates it from general common area composed of the south or front patio; by the WEST, at a distance of 48 feet and 2 feet, totaling 50 feet equivalent to 14.63 meters, 0.61 meters and 15.24 meters with Apartment 502 and exterior wall that separates it from general common area composed of the southern or front patio; and by the EAST, in four distances of 18 feet 9 inches, 12 feet 3 inches, 17 feet and 2 feet totaling 50 feet equivalent to 5.72 meters, 3.73 meters, 5.18 meters, 0.61 meters respectively with Apartment 202 and exterior wall that separate it from general common area (front or southern patio); And by the EAST in four distances of 18 feet 9 inches, 12 feet 3 inches, 17 feet and 2 feet totaling 50 feet equivalent to 5.72 meters, 3.73 meters, 5.18 meters, 0.61 meters and 15.24 meters with Apartment 204, stairway B, Apartment 204, and exterior wall that separates it from general common area composed of the front or southern patio (SIC). This Apartment is composed of kitchen, living room, open balcony, two bedrooms each one with a closet. The master room has a private bath; linen closet and a common bathroom. Parking: To this Apartment belongs parking #203 according to the inscription plans. This Apartment has a 10% participation in the common elements of the building.

The property described above is recorded at page 196 of volume 271 of Luquillo, property number 12,874, Registry of Property, Section of Fajardo.

The Property is described in the Spanish language as follows:

URBANA: Propiedad Horizontal; Apartamento número 203 del Condominio Playa Fortuna, situada en el Barrio Mameyes del término municipal de Luquillo, Puerto Rico. Este apartamento está construido en hormigón armado y bloques de hormigón. Consta de un solo nivel. Su puerta de entrada da acceso a la escalera B, ubicada en el lado Este del edificio y la misma es continua hasta

> las terrazas Oeste y Este, ubicadas a nivel terrero, las cuales a su vez colindan con una acera comunal que da acceso al área de estacionamiento y este a su vez colinda con la calle pública número 1 que da acceso al solar donde se construyó el edificio. Las escaleras, las terrazas, la acera y el estacionamiento son elementos comunes. Área; este apartamento tiene un área total de 839.94 pies cuadrados, equivalentes a 78.06 metros cuadrados. Linderos; por el NORTE, en distancia de 18 pies, equivalentes 5.49 metros con pare exterior que lo separa del aérea común general constituida por el patio Norte o posterior; por el SUR, en una distancia de 18 pies, equivalentes a 5.49 metros, pare exterior que lo separa del aérea común general constituida por el patio Sur o delantero; por el OESTE, en 2 alineaciones, 48 pies y 2 pies que suman 50 pies, equivalentes a 14.63 metros, 0.61 metros y 15.24 metros respectivamente, colindando con apartamento 202 y con pared exterior que lo separa del área común general constituida por el patio SUR o delantero; por el ESTE, en 4 alineaciones, 18 pies 9 pulgadas, 12 pies 3 pulgadas, 17 pies y 2 pies que suman 50 pies, equivalentes respectivamente a 5.72 metros, 3.73 metros, 5.18 metros, 0.61 metros respectivamente colindando con apartamento 202 y con pared exterior que lo separa del área común general constituida por el patio SUR o delantero; por el ESTE, en 4 alineaciones, 18 pies 9, pulgadas, 12 pies 3 pulgadas, 17 pies y 2 pies que suman 50 pies, equivalentes respectivamente a 5.72 metros, 3.73 metros, 5.18 metros, 0.61 metros y 15.24 metros colindando cada alineación respectivamente, con apartamento 204, escalera B, apartamento 204 y pared exterior que lo separa del área común general constituida por el patio SUR o delantero (SIC). Este apartamento consta de cocina, sala, comedor, balcón abierto, 2 dormitorios, cada uno con closet, el dormitorio principal cuenta con baño privado. "linen closet" (percha para ropa de cama), y un baño común. Estacionamiento: A este apartamento le corresponde el estacionamiento #203, según marcado en los planos. Participación: A este apartamento le corresponde una participación de 10%, en los elementos comunes del edificio.

9. The Mortgage is duly registered at the Registry of the Property, Section of Fajardo, at page 196 of volume 271 of Luquillo, property number 12,874.

10. Defendant Oros Verdes, Inc. is the owner of the Property according to the Registry of Property. (d.e. 9-6).

11.  Defendant has breached his obligations under the Loan Agreement as well as under the other loan documents towards Bautista by, among other things, failing to make the agreed upon payments.

12. As of June 22, 2017, defendant owes plaintiff the sum of $141,171.54, which consists of $107,935.07 in principal; interests in the amount of $14,483.81, which continues to accrue until full payment of the debt at the rate of $19.49 per diem; accrued late charges in the amount of $3,3,471.16, valuations and property inspections valued at $1,001.50, and any other advance, charge, fee or disbursements made by Bautista, on behalf of defendant, in accordance with the Loan Agreement as well as under the other loan documents, plus costs and agreed attorneys' fees in the amount of $14,280.00 (collectively, the "Obligations").

13.  On August 4, 2016, Bautista sent a Notice of Default to defendant, informing his failure to comply with the monthly payments as agreed in the Loan Agreement. Therefore, Bautista accelerated the amounts owed and declared that all the obligations under the Loan Agreement are immediately and automatically due and payable in full.

14. Pursuant to the Mortgage, it was agreed that the amount of $142,800.00 would serve as the initial bidding amount (in Spanish, "tipo mínimo").

## II.    RULE 56 STANDARD FOR SUMMARY JUDGMENT

The role of summary judgment in civil litigation is commonplace, "to pierce the boilerplate of the pleadings and assay the parties' proof to determine

whether trial is actually required." *McCarthy v. Northwest Airlines*, 56 F.3d 313, 314 (1st Cir. 1985) (citing *Wynne v. Tufts University School of Medicine*, 976 F.2d 791, 794 (1st 1992)). Thus, this "device allows courts and litigants to avoid full blown trials in unwinnable cases, thus conserving parties' time and money, and permitting the court to husband scarce judicial resources." *Id.* at 315.

Federal Rule of Civil Procedure 56(a) provides that: "[a] party seeking to recover upon a claim . . . may, at any time, after the expiration of 20 days from the commencement of the action . . . move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." The Court may grant the movant's motion for summary judgment when "the pleadings, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986); *NASCO, Inc. v. Pub. Storage, Inc.*, 29 F.3d 28 (1st Cir. 1994). "[T]he principal judicial inquiry required by Rule 56 is whether a genuine dispute as to material fact exists." Wright, Miller & Kane, *Federal Practice and Procedure* § 2725 (4th ed.) (2017).

The procedure authorized by Rule 56 "is a method for promptly disposing of actions in which there is no genuine dispute as to any material fact or in which only a question of law is involved." *Id*. at § 2712. In order to grant summary judgment, the trial court must determine if there are any "material"

factual issues which are identified depending on the substantive law that should be resolved and also, whether such issues are also "genuine." *Anderson*, 477 U.S. at pp. 247-248.

A "material issue" is one that affects the outcome of the litigation; therefore, if a factual issue is not relevant to the resolution of the controlling legal issues, summary judgment should be granted. *Pignons S.A. de Mecanigne v. Polaroid Corp.*, 657 F.2d 484 (1st Cir. 1981); *Finn v. Consolidated Rail Corp.*, 782 F.2d 13 (1st Cir. 1986); *Molinos de Puerto Rico v. Sheridan Towing Co.*, 62 F.R.D. 172 (D.P.R. 1973). As stated by the Supreme Court, ". . . the materiality determination on a motion for summary judgment rests on the substantive law, and it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson*, 477 U.S. at 248.

When, as here, the moving party asserts that the competent evidence clearly demonstrates that it is entitled to judgment, the non-moving party bears the burden of showing the existence of some factual disagreement sufficient to defeat the motion. However, the burden is satisfied only if the cited disagreement relates to a genuine issue of material fact. *Id*. at 247-248. "In this context, 'genuine issue' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party [and] 'material' means that the fact is one that might affect the outcome of the suit under the governing law." *See United States v. One Parcel of Real Property, Etc.*, 960 F.2d 200, 204 (1st Cir. 1992). Therefore, a factual issue

is material if it is relevant to the resolution of a controlling legal issue raised by the motion for summary judgment. *U.S. Fire Ins. Co. v. Producciones Padosa, Inc.*, 835 F.2d 950, 953 (1st Cir. 1987).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. *See Hadfield v. McDonough,* 407 F.3d 11, 15 (1st Cir. 2005) (citing, *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir. 1997). Once the party moving for summary judgement has established an absence of material facts in dispute, and that he or she is entitled to judgement as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." *Méndez-Laboy v. Abbott Lab.*, 424 F.3d 35, 37 (1st Cir. 2005) (quoting, *Maldonado-Denis v. Castillo-Rodríguez*, 23 F.3d 576, 581 (1st Cir. 1994)). "The nonmovant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue . . . . Failure to do so allows the summary judgment engine to operate at full throttle." *Id.*; *see also Kelly v. United States,* 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence).

## III.    DISCUSSION

### GENERAL CONTRACT LAW

Under Puerto Rico law, according to our Civil Code, there is a "contract from the time one or more persons agree to bind themselves with respect to other or others, to give something or render a service."  Laws of P.R. Ann., Tit. 31 § 3371 (translation ours).  Article 1207 of the Civil Code prescribes the principle of freedom to contract, which permits persons to establish the contractual covenants, clauses, and conditions which they so desire, as long as they do not contravene the laws, morality or the public order. *Id*.; De Jesús González v. A.C., 148 D.P.R. 255, 263-64 (1999).  As a result, within the context of the aforementioned limitations, "the type of agreement that can be reached by contracting parties is only limited by the parties' imagination and their will to contract is the supreme law between them." <u>Arthur Young & Co. v. Vega</u>, 136 D.P.R. 157, 169-70 (1997) (translation ours).

In general terms, a contract designates every covenant or voluntary agreement by which proprietary legal relationships are created, modified or extinguished. See José Puig Brutau, *Compendio de Derecho Civil*, Vol II, at 171 (2nd ed. 1994).  Specifically, however, a contract refers to a voluntary agreement between two or more persons by which relationships pertaining to the law of obligations are created, modified or extinguished.  *Id.*  Thus, when the will of every one of the parties acts in consideration of an interest opposite or different from the one that drives the other party, it may be stated that the

contract properly exists.  José Puig Brutau, Fundamentos de Derecho Civil, Tome II, Vol. I, at 10 (3rd ed. 1984).

Article 1213 of the Civil Code lists the requirements of the contract and establishes that "[t]here is no contract unless the following requirements concur: (1) Consent of the contracting parties; (2) Object of the contract; (3) Cause of the obligation that is established."  Laws of P.R. Ann., Tit. 31 § 3391 (translation ours).  *See also Danosa Caribbean v. Santiago Metal*, 179 D.P.R. 40, 45 (2010).  In order to ascertain what constitutes the object of a contract, we must respond the question "what is it that is owed?."  Anything can be the object of a contract, including future things within the commerce between persons, provided, however, that they are not impossible and are determinable.  Laws of P.R. Ann., Tit. 31 §§ 3421, 3422 and 3423; *San Juan Credit Inc. v. Ramírez Carrasquillo*, 113 D.P.R. 181, 185 (1982).  The cause in a contract, on the other hand, points to the purpose or reason that underlies the contractual relationship. *Id.* at 185-86.

Contracts, pursuant to the Civil Code, are perfected by mere consent, and every party is bound from the time of consent not only to comply with what is expressly agreed upon, but also with the consequences that, according to their nature, are consistent with good faith, custom, and the law. Civil Code, Article 1210, Laws of P.R. Ann., Tit. 31 § 3376; *Unisys v. Ramallo Bros. Printing Co., Inc.*, 128 D.P.R. 842, 852 (1991); *Ramírez v. Club Cala de Palmas*, 123 D.P.R. 339, 345-46 (1989).  In addition, it is a clearly established legal axiom that the pact and agreements made by the parties to a contract

have legal force and should be fulfilled in accordance thereto.  Civil Code, Article 1044, Laws of P.R. Ann., Tit. 31 § 2994; *see also García v. World Wide Entmt. Co.*, 132 D.P.R. 378, 384 (1992).  Moreover, when the terms, conditions, and exclusions of a contract are clear, specific, and give no margin to ambiguities or different interpretations, they are the rule to apply.  Civil Code, Article 1233, Laws of P.R. Ann., Tit. 31 § 3471; *see also Curbelo v. A.F.F.*, 127 D.P.R. 747, 760 (1991).  The courts of justice, thus, cannot free a party from fulfilling what it contractually agreed to, when said contract is legal and valid, and does not have any defects.  *Constructora Bauzá v. García López*, 129 D.P.R. 579, 593 (1991).

### STATUTORY MORTGAGE PROVISIONS

One of the most common contracts in our jurisdictions is the loan agreement, whereby "one of the parties provides to the other, . . . money or some other fungible object, with the condition of returning another of the same type and amount . . . ."  Civil Code, Article 1631, Laws of P.R. Ann., Tit. 31 § 4511 (translation ours).  A loan agreement is a unilateral obligation which must specify the amount of money loaned and received, as well as the terms of repayment to the creditor. José R. Vélez Torres, *Curso de Derecho Civil. Derecho de Contratos*, Tome IV, Vol. II, Inter American University of Puerto Rico, Law School, at 451-55 (1997).  The person who receives the money loaned becomes the owner of such money, but at the same time is obligated to repay such amount, plus the agreed-upon interest.  Civil Code, Articles 1644-1646, Laws of P.R. Ann., Tit. 31 §§ 4571-4573.  A loan

agreement should contain, among other things, a provision as to how and when the debt shall be considered "paid".  That way, the debtor is obliged to return the loaned item, as agreed-upon, and the creditor is limited to wait for the expiration of the term in order to receive the loaned item.  *See* Vélez Torres, *supra*, at 453 and 455.

As far as payment of the obligations are concerned, a creditor has the right to demand full payment and cannot be forced to accept partial payments.  Civil Code, Article 1123, Laws of P.R. Ann., Tit. 31 § 3171.  This right preserves the integrity of the debt, which, in turn, highlights the fact that an obligation will not be deemed extinguished until the totality of the debt has been repaid.  Civil Code, Article 1111, Laws of P.R. Ann., Tit. 31 § 3161.

According to the uncontested facts in the case at bar, Oros Verdes, Inc., pursuant to the Debt Transfer and Cancellation Agreement (d.e. 9-4), is obliged under the Financing Agreements, which have been duly endorsed to Bautista.  The principal amounts due under the Financing Agreements is evidenced by the Mortgage Note issued by Doral Bank, duly endorsed to Bautista, in the amount of $142,800.00.  The Financing Agreements are secured by the Mortgage.

Oros Verdes, Inc. has defaulted on its obligations under the Financing Agreements, failing to pay the amounts due therein under its terms, and have failed to cure the existing and continuing defaults on the same.  To the extent amounts owed are due and payable, the Court orders its payment to the plaintiff.

CIVIL 16-2836CCC 14

## IV. CONCLUSION

There being no real controversy regarding the material facts of the case and having reviewed the dispositive motion filed by Bautista and the accompanying documents, Bautista's Motion for Summary Judgment (**d.e. 9**) is granted.[1] Judgment shall be entered accordingly.

SO ORDERED.

At San Juan, Puerto Rico, on February 16, 2018.

                                                S/CARMEN CONSUELO CEREZO
                                                United States District Judge

---

[1] Bautista's Motion Requesting Judgment (**d.e. 16**) filed on December 28, 2017 is MOOT.